Case number 17-1590, United States of America v. Chaka Lachar Castro and Juan Alaya. Oral argument not to exceed 15 minutes per plaintiff, 15 minutes to be shared by the defendants. Andrew Goetz for the appellant. You may proceed. Good morning. Good morning. May it please the Court, Andrew Goetz for the United States. With the Court's permission, I'd like to reserve three minutes for rebuttal. I'll take the two issues here in the order they're presented in our briefs. On the first issue, when a magistrate judge has authorized a search warrant, the Supreme Court has long instructed courts for over 50 years that the warrant should be interpreted with common sense, in context, and not with the hyper-technical rules of construction that are typically reserved for statutes or pleadings. The District Court did not do that here in striking down the search warrants for Defendant Chaka Castro's cell phones under the Fourth Amendment's Particularity Clause. That order should therefore be reversed. Now, the crux of the District Court's opinion here rests on the fallacy that in the bulk of the warrant, the phrase, a crime, can only be interpreted as referring to any crime. That simply is not the best interpretation. The warrant itself, in the same sentence, preceded by or followed by a colon, lists violations of armed robbery, aggravated robbery, under the Texas statute. Well, the District Court judge was grammatically correct. I don't know about grammatically correct. Does common sense mean we throw the rules of grammar overboard? I mean, that might be right. I don't know. The answer is, I think, one, I don't think the District Court was grammatically correct. And two, context here is very important, because we are dealing with police officers dealing with the midst and haste of an investigation. I mean, a crime is actually better than the crime or this crime, which the District Court suggested, because those are singular terms. A crime could refer to the plural. We have the plural here, violations of aggravated robbery. Now, I think you're right that that's not the only interpretation here. But it is the best one. And it's also the one that courts have typically drawn in these circumstances, including in the cases that we've cited in our briefs. What do you do with a crime? And you said context, and I agree with you. The context in that area is pretty good and pretty helpful to you. But then you have that catch-all clause, which takes you back to a very broad reading of a crime. I don't think the catch-all clause there can be construed as modifying a crime. I'm not saying, no, it's not in the same sense. I don't mean that. But, I mean, you said contextually. You say, what do they mean by a crime? When you get to the end of it, you could say, whoa, I guess they mean any crime. I don't think that's the fairest reading of that provision, Your Honor. And I think the reason is because that appears in the end as sort of a stand-alone catch-all clause. It's often the case in these circumstances where we have that type of catch-all clause, and courts have held that it's severable. I mean, a crime here, as the officer testified and as his actions showed, was intended to refer to the violations of aggravated robbery. I mean, his testimony was unequivocal on that point. His actions were equally unequivocal. He testified that that catch-all clause that Your Honor mentioned, he only intended to refer to as a pre-incorporated plain view exception, in case he, quote-unquote, stumbled across evidence, it would not be eliminated from his purview. Now, that's not a correct reading of the law, but it's not an unreasonable one in these circumstances. I don't know if this is out of order, but did the Castro affidavit, or the Castro warrant, have the same reference to the specific Texas crime and criminal section at the very beginning of this sentence that we're talking about? Did it have that same reference before the reference later to a crime? I'm sorry, I'm not following the question. I'm hampered because I can't find the warrants in the pile of paper in front of me at the moment. One of these warrants, it's not the Castro one, it's the other one, it says it identifies the specific crime for which they're seeking evidence in the first sentence or somewhere up top, and then that's followed by a colon, correct? Correct. Does the Castro warrant have the exact same language referencing the specific crime, then followed by a colon, or is it different? Yes, it does. Okay. Correct. It has that language, it has the offense, followed by a colon, and then it immediately gets into the list of file types and information of a crime. Now, it isn't the only way to read it as referring back to it, but keep in mind we're dealing with lay police officers. We don't parse this like a 1L contracts exam. We don't parse this like a statute. We review it with common sense and context. That's how the officer looked at it. That's how the approving magistrate looked at it. That's how the officer looked at it again when he searched. That point was unequivocal. He only searched for and found robbery evidence. It's also how defense counsel looked at it. The district court raised this issue sua sponte. Defense counsel looked at this warrant and said, oh, yeah, that's fine. It was only after the district court raised this issue that defense counsel litigated it. So that's all pretty strong circumstantial evidence here that the people who looked at this language interpreted it as referring back. And the only one that got it wrong was an Article III judge? Yes, that is our argument, and I think the context supports that. And even if the district court's reading was plausible, even if it's the better reading, the good faith doctrine would still apply here. And the good faith doctrine would still apply here, one, because the officer's actions during the search confirmed that he was behaving reasonably, he was only looking for robbery evidence, and that deterrence would really have no place here. Two brings me to the Supreme Court's decision in Hudson, because the evidence that would be suppressed here is causally disconnected from the violation. Hudson involved the violation of the knock-and-announce rule during a search warrant, and the Supreme Court said that the exclusionary rule does not typically apply in those circumstances because the violation, the Fourth Amendment violation there, isn't connected to the evidence that is seized. That's equally true here. The evidence that was seized, the only evidence that was seized, was inarguably included in the proper scope of the search warrant here. Now, we're not saying that that would never result in suppression. I think GROW is an example of when it would, when it's so facially deficient that no officer could rely on it. But even if we're getting back and forth on whether to parse a crime as referring to any crime or the violations immediately preceding it, that's not the type of thing that a simple glance at the warrant, and that's the language the Supreme Court used in GROW, a simple glance at the warrant would have revealed. To the contrary, this gets back to one of the cases we cited in our brief, where the court explained under the good faith standard, if you handed this warrant to someone, if you handed this warrant to someone on the street, they'd know what it referred to. They'd be able to figure out what it authorized the search for. And, yes, it includes some language that can be interpreted one way, but they would know what it refers to. That's the test, though, right? I mean, we hold an officer to a higher standard than the man on the street, right? That's the test for good faith at this court. At least, I mean, it was more of a colloquial aside in that case, but it's one of the reasons why this court found good faith. And I'm blanking on the name of the case. It was, if you handed this to somebody, they'd know what it authorized the search for. We're not arguing that that's the particularity test, Judge Kethledge. We're arguing that that supports our good faith argument here. Judge Larson. And there's never been any allegation in this case at any time that the officer, that any evidence was seized pursuant to this catch-all clause involved in any other unlawful activities. The only evidence has been related to the charge of aggravated robbery. That's correct, Judge Larson. That's why the severability doctrine exists in the first place, so you don't punish the officer by excluding inarguably proper evidence based on one clause at the end if they didn't recover any evidence from it. And this would be a much tougher case if he then relied on that clause in search for child pornography or tax or fraud offenses. We don't have that here. So if you're right about severability and that's what we did, there's nothing to discuss because everyone agrees none of the evidence that was seized was pursuant to that last clause? Correct. Everybody agrees that no evidence was seized pursuant to that last clause. I think they quibble with the a crime controversy still, so I don't know if there's nothing to discuss. But assuming the court either agrees with us or agrees that it's not bad faith to interpret a crime as referring back to those aggravated robbery violations, then you're correct, Judge Sutton. There's nothing left to discuss. Turning with my remaining time to the second issue, the district court just missed or simply misread the law in holding that the search warrant for Defendant Juan Alea's cell phone did not permit the subsequent review of that phone's information via a forensic search. The warrant here authorized a search of that phone for robbery evidence. This phone was in evidence storage, some facility. Was it in a place where it couldn't be tampered with physically or, for that matter, electronically? I believe the answer is yes, and I believe it's in the record. I don't have the specific hindsight for you, Judge Sutton, but I believe that answer is yes. It's a little different about a cell phone from a physical object, a gun used in a crime. You could remotely change the evidence. That's why I'm just wondering, because it's a long time it's sitting there. It's not that long compared to other cases, but it's nine months, and so if there was some way to do that, that would be a problem. I'm not sure it would change the scope of the search warrant, but it does distinguish a phone from, say, a house or something you give back to someone or is back out in the world where you don't maybe have the same probable cause or they have a renewed possessory interest in it. Every court of appeals case that I'm aware of in these circumstances, and especially the Ninth Circus case in Johnston, has held that continued review of the information, even multiple-step forensic reviews, even spread over, I think, five years in Johnston, are permitted under the scope of one search warrant. That search warrant authorizes the review of the information on the phone. The federal rules are written the same way. The Texas rule, 1807C, is written the same way. I haven't seen a lot of these. I mean, I know there's joint investigations, I know there's dual sovereignty and all that stuff, but I haven't seen a lot of this doctrine of we determine whether it satisfies the Fourth Amendment would turn in part on whether you complied with all of the Texas procedures. I'm right that that's how it works. In other words, it becomes an unreasonable federal search and seizure if they're able to show that you violated this Texas procedure, even if it, say, didn't violate Federal Rule 41? No, Your Honor. Actually, what matters for federal proceedings is whether it violates the Fourth Amendment. But what would happen if they had violated, just take this case, assume they just had not complied with state law? They could then hand the evidence to you because it complied with Rule 41 and get out from under the problem that the state courts would suppress it? I don't think it's because of that. I think the answer is yes, but not because it complies with Rule 41. It's because it complies with the Fourth Amendment, and the Fourth Amendment deals with the review of the information on that phone and whether it's within the terms of the warrant. Virginia B. Moore deals with a similar issue where the Supreme Court said that compliance with the state rule of procedure doesn't result in exclusion in federal court. And so even if the Texas rules didn't exist, the Fourth Amendment would have permitted what happened here. What makes our case even stronger is the Texas rules themselves permitted what happened here. And, indeed, if the district court's reasoning were adopted in these circumstances, it would result in that. Oh, I'm sorry. I think maybe what Judge Sutton was asking is if Rule 41 were more restrictive than the Texas rule. Or maybe he wasn't asking this, but I'm interested. If Rule 41 were more restrictive than the Texas rule and the federal officer complied with the state warrant and then tried to introduce the evidence in federal court, complying with the Constitution but not complying with Rule 41, wouldn't federal officers always want to piggyback on lenient state rules that are consistent with the Constitution but more lenient than our federal rules? I don't think so, Your Honor. I mean, Rule 41 doesn't say – Rule 41 just governs not what the officers are doing, but what – I'm sorry, my red light is on me. No, no, it's a good question. Rule 41 governs what goes into a federal warrant when agents get a federal warrant. Right. It doesn't sort of constrict them, their conduct, when they're executing a state warrant in conjunction with state officials. Right, but it seems like a nice workaround if I'm a federal officer and the federal rules are more restrictive in terms of what I need to get to get a federal warrant if I wanted to get my own warrant. If I could go to some state with lax rules that nonetheless comport with the Constitution, I would do that all the time. And you would say that's allowed? And who cares about Rule 41? I would say that's allowed under the Fourth Amendment. Now, this court in the – What about Rule 41? Can they come in and say you just violated federal Rule 41 and you're supposed to file it, follow it? So the court's cases that have dealt with that issue under Rule 41 have said that if it's a federal investigation or a predominantly federal investigation, then typically you require the federal agents to go through the Rule 41 process and comply with Rule 41. That would be a lot different case if they were abusing it. I mean, here the court doesn't have to reach that because the officers – involved in the investigation when it happened. This was just a state investigation that when they realized the scope of it, it became a joint federal and state investigation. So, yes, that would be a much tougher question, and it might require a federal warrant, but it does not here. Okay. Thank you. We'll hear from the other side. I guess we have two lawyers here, two defendants. May it please the Court, James Thomas on behalf of Chaka Castro. Morning. Morning. An interesting position for a criminal defense lawyer to be on the other side of the table. In this case, this was a case that was superseded twice, and we were given timelines with them wanting to follow motions, and the judge had her back up against the wall because she had clients that were in jail for well over a year and a half, and she wanted to resolve the issue before trial. This got decided on the eve of trial. Of course, we thought it was correctly done. We challenged the search warrant on the theory that it was overbroad, and we're piggybacking on some of the cases that we're talking about, the idea of too broad a spectrum with a cell phone. What is it that is contained on a cell phone? Your life, my life, photographs, our searches, our queries, all of that is on the phone, and there's really no restriction once a warrant is issued unless a protocol is employed. The judge ordered an evidentiary hearing, and at the evidentiary hearing, we got into some conversations with the investigator from Texas. This was originally a Texas investigation, and it got handed over to the feds a few months later. What was his thinking about the language that was in the warrant? We talked about the word of versus the. What is more inclusive? The word the, he agreed. Collier? Collier, the investigator from Texas. That exchange in particular seemed to be in the abstract, what do these things mean, not in the context of this affidavit. He did. It was abstract, but the question really went to the objectivity of the search warrant and what would have been allowed. What was contemplated by him at the time that he was using this form book to put together a search warrant? If the word a was used or the was used, he agreed that it was going to be more inclusive with the. That kind of tracks with the other language that was in the search warrant. It would be more inclusive with a. It would be more inclusive with a, excuse me, I misspoke. The is a definite article, and that would be one thing. I agree. On this point, form book or whatever, a and the both were problematic. When it comes to everything else in this, neither one works perfectly. Supposed to refer back to the aggravated robbery charge, and I agree. But if you look at it in the context of the entire warrant and affidavit, the language is the same, Judge Catholic. And it says, and any other crimes. They agree. You're talking about that catch-all at the end. That I think. Unlawful activities. And the cases that the government cites, while on one hand they might say, okay, well here's a construction of versus the. We find some cases in that regard. When you start to talk about the breadth or the over breadth of what it is that's implied, when you can look into a search not only for the specified crime, aggravated robbery, but also to look for any other crimes or any evidence of any other crimes. That to me was over broad, and that was what I thought was the death knell for this warrant. And I thought that the judge acted reasonably. But, I mean, the government, I think, agrees that it was over broad, but also says you can sever that. And that no part of the search was done pursuant to that part of the warrant. I mean, that's what they're saying anyway. There were two things in their argument that I want to take exception with, and I really don't think I fleshed it out enough in my brief. And the first part was the fact that they had indicated that there was, the only thing that they looked for was evidence of the aggravated robbery. Chaka Castro was charged with many different robberies, but there's conspiracy. There's racketeering. There is any number of charges that are not included within the parameter, if I was going to look at Blockberger, what the parameter of aggravated robbery would be, that they could have looked for and they could have justified and do. And then there's the other aspect, and that is that there's more in there that they could have found. For example, the investigator indicated he could find pornography, and he agreed that if he did, that that would be a chargeable offense. But he didn't do that here. There's no allegation. No, but the point is that I'm challenging the overbreadth of the warrant itself. Now, any reasonable officer who is putting together a search warrant affidavit should not be using a form book, number one. Number one, they should particularize it to the very offense in which they are presented, and it should have some guidelines, some parameters, and it should be relevant. That didn't happen here. And the other aspect of it is that we find that this is a form book in Texas, and they're using it throughout the state of Texas. So I think that the judge, in reasoning about the severability argument, that this is something that needs to be addressed, and it has to be addressed in a way in which it is more than just giving it a superficial gloss and saying, okay, well, you know what, that was wrong, but it was harmless error. You've got to send a message that that should not be the way that search warrants are put together. That's not the way that affidavits are supposed to be presented and reviewed. Now, you're talking about an Article III judge that was mentioned, but she was also a magistrate for seven years. She's seen her share of search warrants. She didn't come into this with no knowledge about what it was that she's looking for as a magistrate. And this, of course, was a state law district judge, not a federal magistrate, who had signed the warrant in this case. But I think that the sanction was appropriate. The harm to the government, they admitted. Ninety-nine to 100% of their case is going to get proved by other ways. But the message has to be sent in terms of the way that this was presented, the way that it was done willy-nilly. There wasn't any emergent situation. This was, I think it was seven days later. There wasn't any real hurry here. There wasn't any reason why they couldn't have complied with Fourth Amendment protections here. And so I ask that the case stand. All right, thank you. Appreciate your argument. Oh, did you have another question? No. Okay. Okay. Okay, so Mr. Sass. No, no, no, no. It was. Thank you. Yeah. Thank you. Good morning. Kenneth Sass, appearing on behalf of Juan Olaya. Not surprisingly, my position is a little different than the government with respect to this warrant and this issue. I contend that the district court was correct in holding that the FBI could not have reasonably relied upon the Texas search warrant when they, again, searched Mr. Olaya's cell phone up in Michigan several months later. And the prosecutor in beginning his presentation against my co-counsel cited some old Supreme Court law for a basic proposition, which he claims has been ignored, and I'm not going to address that. But I'll cite some old Supreme Court law for the proposition that a scope of a search is limited by the terms of its authorization. And I think it's still good law that when a police officer gets a search warrant, what he can search depends on what that search warrant says he can search. And in this case, if you look at the search warrant here and then say that several months later an FBI agent says, I'm relying on this same search warrant, I would suggest it's unreasonable. Doesn't the Texas rule itself have an exception that would allow the later forensic search? The Texas rule, first of all, we're not relying on the procedural questions, which I think the government is saying we do. We're relying on the Fourth Amendment. The Texas rule, as I understand it, the Texas rule says that it's executed when the cell phone is seized. You're arguing now about a search outside the limits of the warrant itself. Outside of the warrant, exactly. Not necessarily what the rules. You're not referring to time at this point. Judge Ketledge is asking a question of time. So when you say outside the scope, are you referring to outside Texas, outside of three days, or are you referring to time? Well, I'm not conceding that. So the time isn't an issue here. I think the time is an issue here. Because Texas, what happened in Texas was they got this search warrant, the search warrant which was for aggravated robbery, the search warrant which set forth the facts of three days in December of 2014 of a series of robberies, the search warrant which was signed on December 11th, and the search warrant, the warrant, the affidavit was signed on the 11th, the warrant is signed on the 12th, and the warrant itself allows them three days to execute it. Well, under Texas law, it was executed automatically because they already had the cell phone at this point. They seized the cell phone at the time of arrest, incident to the arrest. The point is, though, that they went forward the next day and searched the cell phone. Now, I attacked that in the district court and argued that that was illegal, but we lost that, and that's not before the court now. The search that was conducted in Texas, which resulted in quite a bit of evidence, was not suppressed. The government still has full use of all of that evidence. What I did say was that this search having been completed and the return having been filed and the search warrant down there being done, for them to come up here nine months later, taking a search warrant which is addressed to the peace officers. What issue are we talking about? What's that? What issue are we addressing at the moment? We are addressing the issue of whether the government can rely on the Texas search warrant to support their search several months later by the FBI in Michigan. Is this the Fourth Amendment? Absolutely Fourth Amendment, yes. I did not see a response to the government's good faith argument in your brief. When I saw that, I said I should have addressed that more directly, but I would simply rely on what the district court judge said with respect to that, which was that no reasonable officer could have relied on that warrant. That's in a nutshell. You have a layperson who's in the midst of, who actually stops. I forget if it was your client or the other one. He actually stops what was going to be a search at the time and says, I need to go get a warrant, if I recall correctly. It must be the other one. It's been a while since I read the briefs. I shouldn't read the briefs until the night before. Anyway, so you have a layperson who goes and does this and references a specific crime, followed by a colon, and then a recitation of specific types of things that might be found as evidence of a crime. And it should have just been completely obvious to this layperson, who's got a lot of other things going on, that when he wrote there a crime, that that by its terms would authorize him to find evidence of any crime, not just the specific crime he had mentioned in the same sentence. That's a little more like Mr. Thomas' issue, because I've not raised that issue. My issue is simply that they are trying to use a warrant that was issued back in Texas, which was about regarding... You guys have divided up the issues here. Is that it? Well, my client, there were two different suppression orders. What's your best argument for nine months later? I mean, give us the best case that says you can't wait nine months. The best case is that the warrant was... The search that was conducted nine months later was not conducted by the people who were authorized by the warrant. So your argument is that the federal agents can never rely on a state warrant? They can't piggyback on a state warrant? No. No, certainly they could cooperate with the state. If the state has a warrant and the federal government is involved, certainly they could. But that's not what happened here. They turned the investigation over to the federal. Secondly, that the warrant was specifically meant to be involved with three days' worth of robberies. There were more than three in Texas. And by the time the federal people did their search, we were talking about several years' worth of activity involving several states, Michigan being one of them, Georgia, et cetera, and looking for racketeering. And now obviously it was connected to the robbery, but it was way more expansive than what was authorized by this warrant, which had been issued way back when and had been executed way back when and had been returned way back when. And the argument that the government is making before you now was kind of an afterthought in the district court. I thought they raised it, so I'm not arguing that they didn't raise it. But their main argument was inevitable discovery, and they have completely abandoned it with good cause. They don't need that argument. What's that? Perhaps they think they don't need that argument. Well, perhaps they do, and perhaps they recognize it's not a good argument, but I understand that. But this idea that the FBI agents were able to – the smallest piece of evidence, later on some other government agency can go back into that thing and say, well, we're just going again, we're going to rely on that original search warrant and completely search that whole computer, a full forensic exam, look at every corner and inch of that search warrant or that computer or cell phone or whatever, and say it's a good search because we had a search warrant way back then. And I think in a nutshell, that's their position. Thank you very much. Thank you. Mr. Goetz. So, you know, the one thing on this last argument, the last defendant, it is funny. I mean, it's not just that it goes from aggravated robbery to RICO. It's conspiracy. It's crimes in other states. So I don't know. I mean, that gives me a little pause. It shouldn't, Your Honor, and I'll explain why. First, when you're searching for evidence of a crime, and here would be those Texas aggravated robberies, you're not just limited to evidence of those robberies but evidence reasonably related to it. That's the standard this Court uses. And so evidence reasonably related to it would include evidence of a common plan or scheme or evidence of other robberies using the same MO. That evidence would be admissible in Texas to prove those robberies. It has to be reasonably related to it. So that's answer one. It wasn't an investigation for conspiracy. It was an investigation just for robbery. No, not quite. Investigation for an armed robbery spree. Now, yes, it didn't list a conspiracy statute, but evidence of conspiracy would be reasonably related to evidence of an armed robbery spree. You had messages saying, you know, let's remember we need to meet at this house to rob it, and later tonight that would be evidence, in fact, that they robbed the house. That's correct, Your Honor. They were the ones who did the robbery. That's correct, Judge Kethledge. And notice that this comes up in similar circumstances. If you have probable cause to search for 100 images of child pornography, you aren't just limited to those images. You can search for the other 10,000 that you find on there. I mean, that's reasonably related to the crime listed in the warrant. And you could also search for evidence of distribution or a conspiracy to distribute those images. If it's reasonably related to the crime listed, probably, and it probably would in most circumstances in most cases, Judge Larson. Getting to the particularity issue, whether this court treats it under the severability doctrine or good faith, the result here is the same. For severability purposes, this clause mirrors clauses in, say, RERIC, where the language is actually far broader, and the court had to sever far more than we're asking this court to. You don't have this language in front of you, do you? Because I'm just curious exactly how you would sever it. What exactly would you do? I mean, it says we're not involved in this or any other unlawful activities. Would you just take out or any? Is that the point? And then you'd say in this unlawful activity? No, I would sever anything after the or there, Judge Sutton, because unlawful activities modifies other files. Notice that that language actually. Deleted or not involved in this unlawful activity. No, I'm sorry. The first or, not the second one. There are two ors there. Or any other files deleted or not involved in this or any other unlawful activities. We're not actually relying on that for any evidence here. The evidence we see is all in that. I got it. Yeah, I see. Okay. I'm sorry, Judge Larson, I missed your question. You would stop at device. So the last, there's a semicolon, the ultimate semicolon, communication facilities directly relating to or operating in any, in conjunction with such device, period. Right. Then you wouldn't go on to or any other file. Yeah, that makes sense. I mean, it is similar to what was done in Roerich, what was done in Green, what was done in Morris, the First Circuit case that we cited. If this court, I'm sorry, my light is on. A form book, the Supreme Court has held a form book. It's not evidence of bad faith. That's Hudson at page 599. And so I would just direct the court to that. If there are no other questions. I don't think so. Thanks to all three of you for your helpful briefs and arguments. Thanks so much. We appreciate it. The case will be submitted.